Good morning. Welcome everyone to today's oral arguments. I am Judge Sanchez and with me is my colleague Judge Thomas and together we want to welcome Judge Liberti who's visiting us from the District of Arizona and and thank Judge Liberti for taking time out of his busy schedule to come join us for these arguments. So I want to remind counsel that we have read the briefs carefully and are familiar with the arguments so please focus your attention on the most know if you have any rebuttal time that you'd like to reserve. We have a couple of cases that have been submitted for oral argument. One of them is Decathlon USA LLC versus HSC Associates case number 24-708 and then Lynch versus Matterport case number 23-4281. There are a few case numbers and we have two arguments for argument. The first one is Alberto Calderon versus Bondi case number 24-2619. And you counsel may approach. It's Nikhil Shah for the petitioner Luis Alberto Calderon. I'd like to reserve one minute for rebuttal at the end. There are two issues in this case. The first issue is whether the immigration judge abused his discretion in denying a continuance to the petitioner to present arguments regarding whether he was a spouse for purposes of special rule cancellation for battered spouses and if he was allowed to go ahead and present expert testimony from a family law expert as to the issue and also have a psychologist testify as he was being subjected to extreme cruelty at the time by his ex-partner. The petitioner asserts that he, the immigration judge, did abuse his discretion in denying a continuance because this was the first time that the office had actually asked for a continuance. It was a very, this was the first time that the judge actually brought up the issue of potentially the annulment barring him from relief at the hearing in 2019 and the continuance that we asked was reasonable. When we asked the judge for a continuance, he came up with his own procedure wherein he said, Mrs. Shah, I'll compromise with you. I'm going to issue an order denying cancellation strictly on this one narrow issue. If you come up with the case that tells you that there's some wiggle room on the issue and not in the context you're talking about where it's a factual issue as to whether fraud was committed or not but something where there's some wiggle room on the term spouse to the extent whose marriage was annulled could still be considered a spouse under the statute and other than the way it's described in the statute I'll reopen the case. Let me, just as a preliminary question, the case was continued it seemed several times over the course of several years. What what was the cause of that? So your honor, this judge in particular has has his own procedures where he actually goes off the record and he continues it on his own. So all of the case, all of the master hearings were continued by the judge on his own because he had a very busy calendar and this was not on the record. If you look at the record it goes from 2013 the transcripts to 2019. He always has off-the-count, off-the-record discussions with counsels and he tells us this is what we would like from you and he would keep continuing them because of his busy schedule and he only brought this issue up in the last hearing and he didn't give us an opportunity. He actually said that he was going to issue an order of removal and then we would be able to submit a motion to reopen to him within 90 days. Well let me let me ask this because it seems to me that the continuance issue seems less relevant than what seems to at least for me to be a question of law and that is, is it the case, is the IJ and the BIA correct that California law treats annulments as void ab initio in all circumstances? And I and I have read through many of these cases that suggest to me that it does not and that the BIA might have erred in its interpretation of California law. Well that was the second issue in this case your honor. I agree with the BIA where they actually said that the term spouse is not defined in the INA and if you look at the dissenting opinion by Judge Brown at the BIA they do mention that this should be considered in a case-by-case basis because they cited a case also which said that if injustice would result then basically that should be factored into the test. And these are complex issues of family law and there is an issue of a continuance here because these aren't issues that are very apparent on its face. I think a family law expert would have actually been able to go ahead and put in his expertise as to the issue. In the court itself in Umanzar versus Gonzalez found that oral testimony by experts is important and even the case that we cited in our brief our in sorry your honor. I mean so I understand the point is your expert would have been able to elucidate what California law says about these issues and I take your point you know case-by-case analysis does seem to be the BIA's precedent but just circle back with me to this issue of California law. There's a California Supreme Court named Sefton. Yes sir. Which is the most recent Supreme Court decision on it that says sometimes annulments are void ab initio and other times they're not they're not given that retroactive effect. If that's the case what should the board have done here in in light of that law? I think that I agree with the dissenting opinion that they should have remanded and considered this on a case-by-case basis because I do understand that these are not things that are specific to one case or the other and then in this case the issue was also the annulment was tied with the abuse. So in some cases the annulments may be an independent thing from an abuse but in this case we were asserting that the annulment and the abuse were tied together and I think that that factor was not considered by the immigration judge and that was something we were going to brief to him. How do we know on this record that the annulment was tied to the abuse and I would just note that your client the husband was claiming that there was abuse of him yet it was this the wife who sought the annulment. Yes your honor and we were going to actually present we didn't get a chance to present the testimony but we were going to go ahead and show that that was done in retaliation to the petitioner issuing a restraining order against against him and if you actually look at the record there is when the petitioner's wife confronted the petitioner's ex-employer at his work demanding to know about his whereabouts she actually identified herself as his spouse this was on the administrative record page 684 so she actually considered herself his spouse when it was convenient to her. What significance of any should we give to the fact that your client defaulted on the marriage the dissolution of marriage petition? Yes your honor if you look at the record too we submitted a psychological evaluation and in the psychological evaluation the psychologist diagnosed my client with having PTSD this was actually on the record page 540 he stated that the petitioner spends more time looking at how others may be perceiving him rather than trusting in how he feels about himself. This is part of the administrative record on page 541 if you look at someone who is an abuse who is a victim of psychological abuse it is understandable to know that that person may not want to confront his ex especially since she had threatened him physically harmed him physically with a knife he feared for his life and that was very reasonable for him to not show up for his annulment hearing. So I guess what you're asking is you believe that you should have been given the opportunity to put forward evidence as to whether the agency should have given some sort of retroactive effect to the annulment itself? Yes your honor. For immigration purposes? Yes. And that's consistent with matter of historia? Yes your honor we do think that it is consistent with matter of historia and also the case that I was going to say to McDonald versus Gonzalez we cited to it in the brief to expert testimony would have been vital in that case the court found that the state prosecutors expert opinion regarding mens rea about unlawful voting was vital in deciding some of these complex issues because these are issues out of the control of both the petitioners immigration council and the Department of Homeland Security and an expert would have weighed in one way or the other but we weren't given a chance to go ahead and even have a full and complete record. But the BIA did cite matter of historia in its decision? They did your honor but so did like the dissenting opinion I think was more persuasive the BIA did cite to the opinion but they didn't factor the other factors that we mentioned about abuse into it they just looked at a very straightforward statutory interpretation without looking at it on a case-by-case basis. Do you have any other arguments? Yes your honor so we do so the other the issue in the case we've talked about the continuance so the other issue is about whether the petitioner was a spouse for special rule cancellation the fact that the petitioner's wife annulled the marriage while she was abusing the petitioner was should have been a factor. The BIA did cite matter of Magana where it says that these things should be analyzed if injustice would result at the end. The Ninth Circuit also recited to this in the reply brief in Purganyan versus Schweiker they came up with a complementary role within the context of social security benefits where it did allow for a retroactive application of finding that there was a valid marriage even though the matter of the marriage was later annulled and we did we just also wanted to clarify on the issue and I think that the judge brought this up on the record partially and also off the record but the fraud requirements also for California and for immigration purposes are very different and for the for California fraud could just be something about as simple as a spouse not wanting to live with the other spouse spouse not wanting to have a child with the other spouse or a spouse just not wanting to be faithful to the other spouse but for immigration the courts have looked at the issue of marriage and what constitutes a good faith marriage and they haven't found one particular rule and that's very understandable but they said that the main rule should be what the parties intended to do at their at the time of their marriage. This was set out by Bark and it's been reiterated by the court in other decisions. The court also in Damon versus Ashcroft again reaffirmed that there's no one particular rule but they did say look at other factors to determine if a good faith marriage existed evidence showing that the spouse and partner courted each other for several weeks before marrying they had a wedding ceremony they shared finances in a joint bank account together they live together. The petitioner and the his ex-partner did all of these things and we actually mentioned she actually identified herself specifically as his spouse. The BIA and where when did she it's a part of the administrative record on page 684 it was the manager of drinks restaurant gave a declaration where he said that she came looking for the petitioner and demanded to know about his whereabouts and she identified herself as his spouse and neither the BIA nor the immigration judge considered the psychological factors or even allowed the psychologist to bring in his opinion regarding emotional abuse and manipulation. The court in Dillard found that abusive spouses are known to manipulate their the abused spouse and there's like a cycle where they do use things such as annulment against them if they know that they can teach them a lesson if they can no longer control them. None of these factors were brought in when the immigration judge denied the continuance and I also wanted to bring up the issue of the continuance when the immigration judge denied the case and said that we had 90 days to submit a motion to reopen what the immigration judge failed to consider was with his busy calendar Mike the petitioner would not have received an automatic stay of removal that would only be for in absentia orders. So if we had done the procedure that he advocated he would still have been vulnerable to the immigration and customs enforcement detaining him and removing him prior to the motion to reopen. He would have had to rule on a stay which with his busy calendar could have taken a month or two. When the BIA failed to give us a decision failed to mail the decision to my address or the petitioner's address and we didn't even know that his BIA case had been denied the immigration and customs enforcement actually did come looking for my for the petitioner which is why I found out that the case had been denied and which led to me requesting that they reissue the decision as you can see as part of the record. Which they did I believe right? Yes but we had to file an emergency a motion to reissue the decision use our one motion option for that and we were actually planning to get a motion to reopen for an expert so whatever the BIA did also compromised on the petitioner's appellate rights to do a motion to reopen but it would have this was a very dangerous option that the immigration judge set forth where it would have left him open to being removed. Can you can you just tell me succinctly what is the test that you think we should apply for relation back? Is it the test from the Sefton case or is it something else? I just I do think that it should be a test on a case-by-case basis. I don't think that the court has released this is a novel issue so I don't think that there is a particular test maybe the test may be set forth in Damon versus Ashcroft just doing it on a case-by-case basis. Especially since abusers are likely to use annulment as a weapon against the person that they're abusing and I think that that should be a factor taken into consideration. We'll reserve the rest of your time. Good morning your honors and may it please the court. Lauren Tacklett on behalf of the Attorney General. The board's interpretation of spouse grounded in the text and structure of the statute is the best reading of the statute and should be entitled to due respect under Loeb or Bright. The plain meaning of spouse requires a legal marriage and the interpretation of spouse for federal law purposes should be informed by state law according to the rules of construction at chapter 1 section 7 of the US Code. Okay but here it seems that the BIA just gets state law wrong because the BIA says that under California law judgment of nullity renders a marriage void from its inception and that's just not that's just not correct. California looks at the public policy purposes when determining whether or not the marriage was void from its inception or is avoidable. Your which is a 2019 or 2017 California Appellate Court stating void ab initio and also I would point to the other cases in our brief such as the matter of Sam Simandetti. Well and also you have a judgment. The Superior Court entered judgment that the marriage was void. Correct. Is that is that that's correct and in part because the petitioner didn't appear to contest it. Correct. Okay so when we're reading these cases involving involving whatever this Seifert balancing Sefton balancing test whatever whatever we want to call it it it seems to me it's usually in these collateral proceedings right so in Sefton it involved a spouse who wanted to re-activate spousal maintenance. Okay so I guess what I'm saying is wouldn't this be a collateral proceeding? That's my word for it. Yes I understand and I think it's important here to note that petitioner never challenged the effect of the California annulment. He challenged whether or not California should have granted an annulment in these proceedings which would not be appropriate but he never actually challenged that the effect of California annulment is that it's void ab initio which is what the immigration judge was reliant upon and therefore he this type of argument would be unexhausted to this court. So I mean this is my concern with this is Sefton's the most recent California Supreme Court case on the matter you know matter of Garcia cited to a Malar case from 1917 and it talks about how there are exceptions to the relation back doctrine so in my view it's not just about whether the marriage has been nullified but whether it's been nullified ab initio as if it had never existed and in that sense the state courts seem to apply it in you know on a case-by-case basis. So if that was the premise by which the IJ and BIA started from that seems to be an erroneous interpretation of California law and what do we do with that? My understanding first of all is that Sefton is somewhat the is stating the exception not the rule it acknowledges that the general premise is we we understand a annulment is void ab initio. But even if it's an exception that means it's not categorical which is what the BIA said. The BIA said in all instances void ab initio and and so Sefton clearly disproves that. I respectfully disagree but assuming the board did get California law wrong. What does the exception language and Sefton mean in your view then? If it's if it's how can you square it being categorically void ab initio but there being exceptions at the same time? I believe I I'm reliant upon the more recent you know my understanding is that Sefton is from 1955 and I'm relying upon the more recent state appellate courts Supreme Court. But there are also California appellate courts like matter of Seton that are more recent in that you know I think that was 2011. There are a number of other cases that have also recognized this more nuanced I guess context for this California law. If the board got California law wrong I think it's still within this court's purview to acknowledge that it correctly interpreted the INA as the definition of spouse should be dependent upon the state law treatment. If it got California law wrong we could remand for the purposes of reconsidering under the appropriate California standard. However let me can I ask you this I'm sorry to interrupt but it seems that there's another problem that I had with the board's decision and that it didn't follow matter of Astorga which says once upon a time the board just followed the state law determination of annulment but now we look at things on a case-by-case basis to see whether to relate back for immigration purposes and it cites a number of cases like Castillo-Sedano and Wang and and others and matter of Magana so it seems like the board also was incorrect in its statement of its own prior precedent. You know that even if it cites matter of Astorga it wasn't actually doing a totality of the circumstances analysis in this case. So in my view when that when the board doesn't follow its own precedent we send it back in order to do so in the first instance again. The board's prior cases actually support its reading of the statute here and I would point to one matter of Astorga is reiterates that the general principle of validity of marriages are coming from state law and then relates an annulment back because in part because that's what the state law does. I also would point to again matter of Semedi which is you know categorical in saying the relation back doctrine applies to all annulments in California irrespective of the ground result of the decree is the you know no marriage ever existed and then revokes adjustment of status based on that determination and in relation to the cases that you were citing in respect to matter of Wang, matter of Magana, I would point out that in those cases they are visa petitions and the non-citizen is attempting to benefit from the annulment not benefit from the marriage here. We're looking at a different of removal as opposed to visa petitions and here the petitioner is trying to benefit from the marriage not benefit from the annulment and it would seem wrong. What do you mean by that trying to benefit from the marriage and not the annulment? So here petitioner is reliant, his entire case is reliant upon the idea that he was married at the time of the abuse. In the other cases matter of Magana, matter of Wang, these types of cases their claim is that they were not married based on the fact of the annulment and the board there well INS there is going back and saying no you were married at the time we're not going to allow you to lie now and say you weren't married because you subsequently got an annulment. Right so exactly right I think I think that's correct and that's why I think Astorga which post dated Samedi for example right and sort of charted a different path that's why the BIA has said let's take this on a case-by-case basis and analyze what the immigration effects would be and whether it you know carries out an injustice or there are other immigration policies at issue here and I just don't see the board having done so in this instance. And that was appropriate in this instance because the statute is limiting on the types of relationships that qualify so very specifically if you look at subsection 3 that discusses putative marriages based on bigamy that is Congress limiting the board's ability to recognize a relationship that has been terminated. Congress you know it not in fact actually this is pretty important the petitioner cites a 1997 INS memo in their brief and that statute at the time it says perhaps you can get cancellation of removal because it is more broad than adjustment of status any terminated relationship. However after 1997 and 2000 that is when Congress added the limiting provision in terms of putative spouses due to bigamy. And in fact my apologies for interrupting you because this is a question I've been waiting to ask you is do you think that could the congressional amendments in the 1990s had any effect on the application of these earlier cases decided in the 1970s particularly or what I'm particularly referring to are the BIA's decisions from the 1970s? I would point out that yes the the statute here I can't speak to what the statute said in relation to the visa petition context in the 1970s but the statute here at issue. And that was the focus of my question. Yes exactly that is limiting to the board's ability to consider these kind of case-by-case analyses because it could result in spouse meaning different things in different times in different cases and the meaning of a word in the statute should be consistent across cases. And you raise an interesting point because what if what if California laws definition of spouse is different from Alabama's law and then would would that be a problem to have inconsistent application of section 1229B in different parts of the United States? It would be consistent application with respect to we are defining it based on state law however the states have defined their marriage and that is what chapter 1 section 7 contemplates in the US Code when it says that the marriage will be based on the state. Let me let me see if I understand your argument. I had been meaning to ask this as well. Is it your view under special rule cancellation that Congress has decided that all annulments regardless of state law or void ab initio or that we or that Congress wanted courts to still in the agency to still look to state law to see where there's a valid marriage and then find exceptions within that? My understanding is that Congress limited the board's ability to look through the the details of an annulment by limiting the types of case the types of relationships here that would be valid i.e. only those. I'm not sure so does Congress consider an annulled marriage void ab initio in all circumstances in your view? In my view it would be dependent on how the state law treats the how state law treats the annulment based on again 7. Because I mean the bigamy example is an interesting one but you sort of have to back end it into this assumption that because that bigamy exception exists that means annulments mean void ab initio right I mean and and now you're telling me that it's not necessarily the case that it would be state-by-state so I guess that the problem I have a little bit with that interpretation is that the special rule cancellation isn't just about spouses right it also protects alien children and so it has other protective features that aren't just about the status of a marriage and so it's it's hard for me to see in the absence of something more explicit why Congress would say in an annulled marriage no one can get VAWA protection if you've been abused unless you were in a bigamous relationship. Congress is you know the purpose was to extend relief to victims of abuse but Congress has not opened the floodgates to everyone it was very specific in the types of relationships that it was considering eligible and Congress is allowed to draw those lines perhaps it's the idea that I of course it's allowed but I just what in the statutory text tells us that Congress intended annulled marriages those those subject to an annulled marriage to be outside of the bounds of VAWA protection unless it involved an annulment based on bigamy I you know it's I I agree that there's that protection for bigamy I it just doesn't follow especially when Congress hasn't defined spouse that the premise begins that way. I read subsection 3 as showing that Congress considered the messy factual situations that may arise in this context and it was being very specific that we only want to extend the protections of VAWA to a very specific subset and that is the you know reading that the board decided on and that is a you know best reading of the statute given that limiting provision. So let me ask you this suppose you had a state decree that annuls a marriage but is not void ab initio so that's the state determination is that and it's not based on bigamy would a petitioner be entitled to VAWA protection in that circumstance under your reading of the statute? If that such a order would exist I think that that would therefore be acting like a divorce how we generally conceive of divorce and in this case divorce would mean that no there was a there was a marriage that ended and as long as the abuse occurred during that valid marriage yes they would be enabled they entitled to VAWA. So in some ways it all circles back to what this how the state law determines this issue to some extent and the facts of that case? Yes. Let me see this do my colleagues have any other questions? Okay thank you. One of the this is a very unique case one of the things that was done in this case was we weren't given the actual BIA decision until the certified administrative record was filed. Our office did attempt to actually get a family law expert to do a motion to reopen to the BIA but because of what transpired in the case on the record. Counsel can I ask you to respond to government counsel's arguments about how to interpret VAWA and what was Congress's intent in creating this bigamy exception for example and and the effect of annulments in cases? And it actually ties in your honor so I'm gonna get to the congressional intent in a second but the family law expert that was going to testify was actually going to discuss California law in general and even talk about potential options that the petitioner had to fix the annulment issue and we were compromised on that just because of the way the BIA issued the decision and us rushing to having to file the use of one motion rule to file a motion to reissue the decision. I get your why don't you answer my question because you have limited time. Yes and the other so the issue is that congressional intent does seem vague when I look at it it seems that it would be odd that they they were trying to protect victims of physical abuse as well as severe psychological trauma or emotional abuse it would seem odd that they would want to go ahead and foreclose someone whose spouse was using the annulment as a weapon against him to not be considered applicable for that relief especially since it follows the pattern with Haggard of emotional abuse. So in your view has Congress taken away some discretion from the board in order to look at these cases or is it still under the 1970s decisions supposed to look at this on a case-by-case perspective? We do believe that it still would be on a case-by-case basis it would just be in keeping with the intention of the act. Okay any other questions? Thank you counsel. Thank you both for your helpful arguments the matter will stand submitted.
judges: SANCHEZ, THOMAS, Liburdi